### DUFFY v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. March 8, 1912.)

1. MUNICIPAL CORPORATIONS (§ 768*)—DEFECTIVE SIDEWALKS—LIABILITY.

A city is not liable for an injury to a pedestrian from a defect in a sidewalk consisting of a depression not exceeding three or four inches in depth at its deepest point, though it has existed for a year.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1622, 1624, 1625; Dec. Dig. § 768.*]

2. MUNICIPAL CORPORATIONS (§ 819*)—DEFECTIVE SIDEWALKS—DEATH OF PEDESTRIAN—EVIDENCE—SUFFICIENCY.

In an action for the death of a pedestrian falling on a defective sidewalk, evidence *held* not to support a finding that the death was caused by the fall, and not by typhoid fever having no connection with the fall.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1739–1743; Dec. Dig. § 819.*]

Appeal from Trial Term, New York County.

Action by Annie Duffy, administratrix of John Duffy, deceased, against the City of New York. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Loyal Leale, for appellant.
John J. Welsh, for respondent.

DOWLING, J. John Duffy, a driver in the employ of Ownes & Co., resided at No. 325 East Forty-Seventh street in the city of New York. At about noon on August 8, 1910, he left his wagon in front of the wagon works at No. 415 East Forty-Seventh street, to be repaired, and, stabling his horses in the adjoining premises (421), went to his home for lunch. Upon his return, as he was walking east

---

and apparently about to turn into the wheelwright's shop at No. 415, he suddenly fell upon the sidewalk. The only eyewitness to the accident was a boy who at the time was about 12 years of age. He testified that the day in question was misty, dark, and cloudy, and that rain had fallen in the morning. Just as Duffy was about to turn into the shop, his foot slipped "off the sidewalk" and "into a hole" therein, which was in front of the shop. The witness reiterated the statement that the decedent's "foot slipped off the asphalt into the hole, and he fell." This hole was caused by the wearing away of the asphalt covering of the walk, and adjoined the runway for vehicles into the shop, which was composed of paving blocks only with no asphalt covering. It was irregular in shape and varied in depth. Its extent was one of the disputed questions in the case. After the accident, Duffy was taken to Flower Hospital, suffering from a fracture of the tibia, the result of his fall. He was thereafter removed to Bellevue Hospital, where he finally died on October 30, 1910. The cause of his death is also in dispute; plaintiff's contention being that it was due to the fall, defendant's proof being that it was due directly to typhoid fever. Upon the trial of the action plaintiff recovered a verdict for $2,500. The present appeal is from the judgment entered thereupon and from the order denying a new trial.

[1] Upon the question as to the size of the break in the asphalt covering of the sidewalk plaintiff produced the boy Williamson, Bernard Rock, a letter carrier, and Charles Mann, a wheelwright employed in No. 415, none of whom had ever measured the depression, but who gave their estimates of its extent. The first witness gave its depth as 7 inches, and, when asked to indicate his idea of that distance, measured off a space of 8½ inches. The second gave the depth of the hole as 8 inches, the width as a foot and a half, and the length as 5 feet. The third witness gave the length of the break as 4½ to 5 feet, the width as half a foot, and the depth about 6 inches. All agreed that it had been present for a year, gradually growing larger as wagons passed over it on their way into the shop. The defendant produced six witnesses, three of whom had made actual measurements of the break. One of these was Daniel Twomely, an examiner in the finance department, who measured it on August 10, 1910, and found it 3 inches deep at the deepest point, 10 feet long, and with hard earth at the bottom. The second was Charles Weinberg, a mechanical engineer employed by the board of education, who measured it on August 22, 1910, and described it as 23 inches in width at its widest part, gradually diminishing in extent towards the curb and house line, and 3 inches in depth at its deepest part, in the center of the walk. The third, George Seinner, an examiner of claims in the corporation counsel's office, measured it on September 1, 1910, and found it 3 inches deep at the deepest point, and 10 feet long, with hard earth at the bottom. The other witnesses were Harold A. Coe, a photographer, who visited the scene of the accident on August 11, 1910, and states that the deepest part of the hole was 3 inches; Officer Albert Alboniga, who gives its depth as from 3 to 4 inches; and William Hoeler, in front of whose shop

it was located, and who estimated its depth at the spot where Duffy fell as 3 to 4 inches. The preponderance of the testimony is clearly that the hole at its deepest point was not more than 3 to 4 inches in depth, and this is not such a defect in the highway as will render the city liable for injury suffered therefrom. Butler v. Village of Oxford, 186 N. Y. 144, 79 N. E. 712; Hamilton v. City of Buffalo, 173 N. Y. 72, 65 N. E. 944; Schall v. City of New York, 88 App. Div. 64, 84 N. Y. Supp. 737; Henry v. City of New York, 119 App. Div. 432, 104 N. Y. Supp. 440.

[2] Upon the question of the cause of decedent's death, plaintiff produced two physicians as witnesses, neither of whom had ever seen decedent, and who, in answer to a hypothetical question which excluded certain vital elements tending to show the presence of typhoid fever, gave it as their opinion that Duffy's fall was a competent producing cause of his death. One of these experts, Dr. Francis M. Burke, assumed in answering the question that Duffy had thrombosis and he testified that death was due to the septic condition following the injury to the leg, known as "septic pneumonia," in conjunction with thrombosis of the intestinal vessels. On cross-examination he admitted that rose spots upon the abdomen are one of the signs of typhoid fever, and that such spots, accompanied by a high temperature and the presence of the typhoid bacillus in a blood culture, might indicate the presence of typhoid. In answer to a question embracing the clinical history of the case during the time that typhoid fever was claimed to be present, he admitted that upon the facts stated it would look like a case of typhoid. The other expert, Dr. Robert L. Grahame, gave the cause of death as "a thrombotic stopping of the circulation in the lung at the location described by the rales and likewise a similar condition setting up in the gut." Both these witnesses testified to the results of a gangrenous condition of the intestine. For the defense, apart from one expert, the testimony came from physicians in actual attendance upon the patient. Dr. Gaston A. Carlucci, interne at Bellevue Hospital, attended Duffy there for the fracture of the tibia, beginning on August 10, 1910, and cared for him until the plaster cast was removed on October 2d, at which time no signs of ecchymosis remained on the leg, and the only evidence of the injury was a callus over the fracture. Duffy had progressed normally towards recovery until September 25th, when his temperature rose, and he began to complain of pains in the head, followed by a chill the following day, and still higher temperature. After three days' observation, a blood culture was taken, and his symptoms were diagnosed as those of typhoid fever, the rose spots having then appeared all over the abdomen, with several on the chest. When the report of the examination of the blood culture was made on October 2d, it disclosed the presence of the typhoid bacillus, which was seen by Dr. Carlucci himself under the microscope. He was then removed to another pavilion. The blood count on October 25th showed an increase in the leukocytes to 88, instead of the normal 75 or 76, and the patient's temperature rose several degrees. An operation was then performed by Dr. John B. Walker, the visiting surgeon, upon

which a perforation of the intestines was found, diagnosed as due to typhoid fever. The death on October 30th was due in witnesses' opinion to typhoid fever.

Dr. John B. Walker, the surgeon who operated on Duffy, testified to the details of the operation, in the course of which he found the perforation in the part of the bowel known as "Peyers Patches," which was due to typhoid fever. He swore that in his opinion Duffy was not suffering from an embolus or thrombus prior to his death, and described the condition actually found in the bowel which confirmed his view that there was a perforation, due to the typhoid germ, and not a gangrenous condition due to a thrombus or embolism. Upon the entire proof in this case, it is clear that the answers of two experts to a hypothetical question which excludes the most significant elements tending to prove the presence of typhoid fever, and in reply to which they swear that in their opinion the decedent's fall would have been a competent producing cause of his death more than two months afterwards, cannot carry more weight or possess more probative force than the testimony of two physicians who actually attended the patient, who diagnosed his ailment who described his condition and symptoms, one of whom examined the blood culture, the other of whom performed the operation upon him, and both of whom testified positively that he died from typhoid fever, with the progress of which disease the entire medical record of the case is consistent and all of whose characteristic indicia were exhibited by the decedent. Upon this record the preponderance of the proof is that Duffy died as the result of an attack of typhoid fever, with which his fall had no connection whatever.

The judgment and order appealed from must therefore be reversed and a new trial ordered, with costs to appellant to abide the event. All concur.